UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEFENDERS OF WILDLIFE, et al.,<br><br>           Plaintiffs,<br><br>      v.<br><br>U.S. FISH AND WILDLIFE SERVICE, et al.,<br><br>           Defendants. | Case No. 16-CV-01993-LHK<br><br>**SUPPLEMENTAL BRIEFING AND QUESTIONS FOR PRELIMINARY INJUNCTION HEARING** |

<u>Supplemental Briefs</u>

By 9:00 a.m. on May 20, 2016, Federal Defendants shall file a four page response to the following questions:

- Federal Defendants' opposition brief states "[i]t is plain from the text of the CWA and the Section 404(b)(1) Guidelines that their scope is limited to 'waters of the United States' and impacts thereto, including secondary effects and cumulative effects to the aquatic ecosystem. Accordingly, when issuing a CWA Section 404 permit, the Corps typically limits its responsibility to the areas relating to the discharges of dredged or fill material into waters of the United States and 'those portions of the entire project over which the [Government] has sufficient control and responsibility to warrant Federal Review, and that is what it did in this case."
    - The above statement seems to indicate that the Corps still denies jurisdiction over the entire project, for the life of the project. What authority does the Corps rely on to enforce compliance with the Biological Opinion as to the entire project site and over the life of the project?
    - Is the Corps stating that there is not "sufficient control and responsibility to warrant Federal Review" over the life of the project? Does this position contradict the

1
Case No. 16-CV-01993-LHK
SUPPLEMENTAL BRIEFING AND QUESTIONS FOR PRELIMINARY INJUNCTION HEARING

        Corps' inclusion of the construction, maintenance, and operation of the project in the Corps' final environmental impact statement under NEPA? *See* ECF No. 24-1 at 4.

- The Corps' revised permit provides that "[t]he time limit for completing the work authorized ends on March 15, 2021." ECF No. 59-2. How does the Corps propose to enforce the Biological Opinion after the work authorized by the permit is completed? What ESA recourse exists if PVS fails to implement the promised conservation actions after the time limit in the permit?

- On August 28, 2015, the Corps represented to the Service that the incidental take statement "would become binding on the applicant for the life of the project through a permit issued by this office. . . . The Corps will include a special condition in any permit, if issued, requiring the applicant to adhere to the [Biological Opinion]." ECF No. 43-6. The Corps also explained "[t]he [Biological Opinion] is enforceable through a special condition under any permit issued to the applicant." In the March 8, 2016 Biological Opinion, the Service explained that the Corps "has stated that it lacks authority to regulate any of [PVS's] activities beyond the construction, operations, and maintenance phases of the proposed project." ECF No. 24-1 at 106.
  - To what extent must the Service independently evaluate the Corps' jurisdiction over the proposed action?
  - Is whether the Service acted arbitrarily and capriciously in developing the Biological Opinion dependent on whether the Corps incorporates the finished Biological Opinion in the Section 404 Permit?

By 9:00 a.m. on May 20, 2016, Plaintiffs shall file a three page response to the following questions:

- In *Center for Biological Diversity v. U.S. Bureau of Land Management*, 698 F.3d 1101, 1115 & n.9 (9th Cir. 2012), the Ninth Circuit indicated that conservation measures may be enforceable under the ESA when the measures are incorporated into an incidental take statement or the measures are incorporated into the proposed project design. *See id.* ("Noncompliance with the ESA's procedural and substantive requirements regarding compliance with mitigation measures incorporated as part of the action project therefore exposes an action agency and project applicant to citizen suits."); *see also Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1046 & n.12 (9th Cir. 2015).
  - Do Plaintiffs dispute that the proposed project design included the conservation measures, including those occurring over the life of the project?
  - Do Plaintiffs dispute that, if PVS fails to fully comply with the conservation measures described in the 2016 Biological Opinion, the Corps must either reinitiate consultation or the FWS or citizens may bring suit?

- On August 28, 2015, the Corps represented to the Service that the incidental take statement "would become binding on the applicant for the life of the project through a permit issued by this office. . . . The Corps will include a special condition in any permit, if issued, requiring the applicant to adhere to the [Biological Opinion]." ECF No. 43-6. The Corps also explained "[t]he [Biological Opinion] is enforceable through a special condition under any permit issued to the applicant." In the March 8, 2016 Biological Opinion, the Service explained that the Corps "has stated that it lacks authority to regulate any of [PVS's] activities beyond the construction, operations, and maintenance phases of the proposed project." ECF No. 24-1 at 106.
  - To what extent must the Service independently evaluate the Corps' jurisdiction over the proposed action?

2
Case No. 16-CV-01993-LHK
SUPPLEMENTAL BRIEFING AND QUESTIONS FOR PRELIMINARY INJUNCTION HEARING

- Is whether the Service acted arbitrarily and capriciously in developing the Biological Opinion dependent on whether the Corps incorporates the finished Biological Opinion in the Section 404 Permit?

Hearing Questions

Each side shall have twenty minutes to address the following questions at the May 20, 2016 hearing. Federal Defendants and the intervenor are considered one side and shall share the twenty minutes.

Questions for all parties:
- To determine the scope of environmental analysis under NEPA, the Corps must analyze all areas of a project over which there is sufficient federal control to warrant federal review. *See* 33 C.F.R. 325 App. B § 7(b). The Corps' final environmental impact statement, created pursuant to NEPA, evaluated the environmental impacts of the entire site for construction, operation, and maintenance of the project. ECF No. 24-1 at 4.
  - Do Plaintiffs contend that the Corps' final environmental impact statement was too broad in scope?
  - What is the relationship between the scope of analysis under NEPA and the Corps' permitting authority under the CWA?

- The March 8, 2016 Biological Opinion states that "[t]he protective coverage of section 7(o)(2) may lapse if: (1) the Corps fails to require the Applicant to adhere to the Terms and Conditions of the Incidental Take Statement through enforceable terms that are added [to] their permit, [or] (2) the Corps fails to retain oversight to ensure compliance with the Terms and Conditions of the Incidental Take Statement." ECF No. 24-1 at 106. Why does a failure by the Corps to incorporate the terms and conditions of the incidental take statement into the Section 404 permit lead to a finding that the Service acted arbitrarily and capriciously, rather than opening the Corps and PVS to liability under Section 9?

- Is the "best scientific and commercial data" requirement subject to harmless error analysis?

Questions for Plaintiffs
- Do Plaintiffs agree that the project could not proceed without a Section 404 permit and thus the entire project is "interrelated" to the Corps permit? If not, do Plaintiffs believe that the conservation measures are appropriately considered as "cumulative effects" of the action rather than effects of the action?

- It appears that Plaintiffs seek a preliminary injunction enjoining construction of the entire project. ECF No. 24 at 25. If the Court were to agree that Plaintiffs are likely to succeed on their claims, what authority does the Court have to enjoin parts of the project that may be outside the permitting authority of the Corps?

Questions for Defendants
- The Corps determined that the entirety of the project cannot proceed but for the impacts to the Corps' jurisdictional waters. Please discuss the relationship of the fill activities to the overall project.

- Is the Corps' obligation to avoid jeopardy to ESA-listed species under Section 7(a)(2) of the ESA coextensive with the Corps' duty to avoid jeopardy under the CWA and Section 404(1)(b) Guidelines?

**IT IS SO ORDERED.**

Dated: May 18, 2016

_____
LUCY H. KOH
United States District Judge